**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**FAHAD ALGHAMDI,**

        **Plaintiff,**

**vs.**                                   **CASE NO. 3:05cv344-RS**

**TOM RIDGE, et al.,**

        **Defendants.**
_____/

## ORDER

Before the Court are Plaintiff's First, Amended, and Supplemental Motions for Award of Attorney Fees and Costs (Docs. 28, 30 & 31.)

### I.  FACTS

Plaintiff Fahad Alghamdi is a native of Saudi Arabia.  On or about July 12, 2004, Alghamdi filed an application for naturalization with the United States Citizenship and Immigration Services ("USCIS").  In order to obtain United States citizenship, an applicant is required to successfully complete an examination demonstrating the applicant's English literacy and basic knowledge of the history and government of the United States.  See 8 U.S.C. § 1446(b); 8 C.F.R. § 335.2(c).  Alghamdi was examined by Defendants on December 6, 2004.  Alghamdi passed the examination.

Despite Alghamdi's successful completion of the examination, Defendants failed to render a decision on Alghamdi's application for naturalization.  Defendants asserted that the delay in processing Alghamdi's application was justified because the Federal Bureau of Investigation ("FBI"), the agency charged with conducting background checks of applicants seeking naturalization, had yet to complete Alghamdi's background check as required by 8 C.F.R. § 335.1.[1]

---

[1]8 C.F.R. § 335.1 is entitled "Investigation of applicant" and states, in relevant part, that

        Subsequent to the filing of an application for naturalization, the

Alghamdi commenced this action on September 12, 2005.  The Complaint requested that this Court render a decision on Alghamdi's naturalization application, declare his entitlement to become naturalized as a citizen of the United States, and grant such further relief as may be just, lawful, and equitable (Doc. 1.)  In a later filed document, Alghamdi requested that this Court require Defendants to process his application within a reasonable time frame or justify the delay (Doc. 14.)  In its order dated March 6, 2006 (Doc. 20), this Court determined that jurisdiction was proper under 8 U.S.C. § 1447(b).[2]

The order dated March 6, 2006, rejected Defendants' contention that the "examination" that is articulated in § 1447(b) includes both the interview that occurred on December 6, 2004, and the criminal background check that is required by 8 C.F.R. § 335.1.  Instead, this Court followed the weight of decisional law which holds that the "examination" that is referenced in § 1447(b) includes only the interview that occurred on December 6, 2004, and which tested Alghamdi's English literacy and knowledge of

---

Service shall conduct an investigation of the applicant.  The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application.

8 C.F.R. § 335.1.

[2]8 U.S.C. § 1447(b) is entitled "Request for hearing before district court" and states that

If there is a failure to make a determination under section 335 [8 U.S.C. § 1446] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the service to determine the matter.

8 U.S.C. § 1447(b).

the history and government of the United States.  Because Alghamdi had successfully completed the interview and because Defendants had failed to render a decision on the application before the end of the 120-day period after the date on which the examination was conducted, this Court exercised the authority granted to it under 8 U.S.C. § 1447(b) and scheduled a hearing for April 10, 2006.

At the hearing on April 10, 2006, this Court issued an order (Doc. 22) that remanded the matter to the USCIS for a period of thirty days.  The order required USCIS to render a decision on the application not later than May 10, 2006.  USCIS subsequently granted the application, and Alghamdi was naturalized on May 9, 2006.  An order and judgment were then entered on May 18, 2006, dismissing the case with prejudice (Docs. 26 & 27.)

On June 13, 2006, counsel for Alghamdi filed First, Amended, and Supplemental Motions seeking an award of attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 (Docs. 28, 30, & 31.)  Defendants filed a response in opposition to the motions on June 27, 2006 (Doc. 36.)  Before this Court could resolve the motions, however, Local Rules 7.1(B) and 54.1(C) require counsel seeking attorney's fees to first confer with opposing counsel in a good faith effort to settle the issue of liability for attorney fees.  In its order dated August 29, 2006, this Court therefore ordered counsel for Alghamdi to comply with Local Rules 7.1(B) and 54.1(C) (Doc. 37.)  A Certificate of Conference was filed on September 11, 2006, indicating that counsel for both parties had conferred in good faith to resolve by agreement the issue of liability for attorney fees but that disagreement existed on two issues: (1) whether Alghamdi is a prevailing party in this action; and (2) whether Defendants' position was substantially justified (Doc. 39.)  This matter is now ripe for resolution by the Court.

## II.  DISCUSSION

The motions request attorney fees and costs under 28 U.S.C. § 2412(d)(1)(A), a part of the Equal Access to Justice Act ("EAJA").  Section 2412(d)(1)(A) states that

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil

> action (other than cases sounding in tort), including
> proceedings for judicial review of agency action, brought by or
> against the United States in any court having jurisdiction of that
> action, unless the court finds that the position of the United
> States was substantially justified or that special circumstances
> make an award unjust.

A party is therefore entitled to fees and other expenses under § 2412(d)(1)(A) if (1) it is a "prevailing party" and (2) if the position of the United States is not "substantially justified" or special circumstances do not make an award unjust.  Both of these requirements are examined below.

**A. Prevailing Party**

The Supreme Court's decision in <u>Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.</u>, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), guides the inquiry into whether Alghamdi can be properly characterized as a "prevailing party."  In <u>Buckhannon</u>, the Supreme Court rejected the "catalyst theory" under which a plaintiff was deemed a "prevailing party" simply because he filed a lawsuit which precipitated a voluntary change in the defendant's conduct.  The case syllabus summarizes the factual scenario in <u>Buckhannon</u>:

> Buckhannon Board and Care Home, Inc., which operates
> assisted living residences, failed an inspection by the West
> Virginia fire marshal's office because some residents were
> incapable of 'self-preservation' as defined by state law.  After
> receiving orders to close its facilities, Buckhannon and others
> (hereinafter petitioners) brought suit in Federal District Court
> against the State and state agencies and officials (hereinafter
> respondents), seeking declaratory and injunctive relief that the
> 'self-preservation' requirement violated the Fair Housing
> Amendments Act of 1988 (FHAA) and the Americans with
> Disabilities Act of 1990 (ADA).  Respondents agreed to stay
> the orders pending the cases's resolution.  The state
> legislature then eliminated the 'self-preservation' requirement,
> and the District Court granted respondents' motion to dismiss
> the case as moot.  Petitioners requested attorney's fees as the
> 'prevailing party' under the FHAA and ADA, basing their
> entitlement on the 'catalyst theory,' which posits that a plaintiff
> is a 'prevailing party' if it achieves the desired result because
> the lawsuit brought about a voluntary change in the
> defendant's conduct.  As the Fourth Circuit had previously
> rejected the 'catalyst theory,' the District Court denied the

motion, and the Fourth Circuit affirmed.

Id. at ¶ 1 of the syllabus.  The Supreme Court affirmed the decision of the district and appellate courts, holding that "[t]he 'catalyst theory' is not a permissible basis for the award of attorney's fees under the FHAA and ADA."  Id. at ¶ 2 of the syllabus.  Although the precise holding in Buckhannon merely rejected the "catalyst theory," the Buckhannon Court did, through dicta, elucidate the meaning of "prevailing party" and clarify the circumstances in which a party is entitled to an award of attorney's fees:

1.  A "prevailing party" is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded (in certain cases, the court will award attorney's fees to the prevailing party). – Also termed *successful party*."  532 U.S. at 603, 121 S. Ct. at 1839, 149 L. Ed. 2d at 862 (quoting Black's Law Dictionary 1145 (7th ed. 1999)).

2.  "This view that a 'prevailing party' is one who has been awarded some relief by the court can be distilled from our prior cases."  Id.

3.  "Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims.  Our 'respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can said to prevail.'" 532 U.S. at 603-04, 121 S. Ct. at 1839-40, 149 L. Ed. at 862 (citations omitted.)

4.  "In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees" because "it . . . is a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant."  Id.  "Private settlements do not entail the judicial approval and oversight involved in consent decrees."  Id., 149 L. Ed. at 863.

5.  "These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."  Id. (citations omitted.)

The Buckhannon Court then determined that

the 'catalyst theory' falls on the other side of the line from these examples.  It allows an award where there is no judicially

> sanctioned change in the legal relationship of the parties . . . A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.

Id., 532 U.S. at 605.

Although the Buckhannon Court's inquiry focused on the construction of "prevailing party" under the FHAA and ADA, the Eleventh Circuit recently concluded that the Buckhannon analysis also applies to the proper construction of "prevailing party" under "other fee-shifting statutes," including the EAJA.  See Morillo-Cedron v. District Director for the U.S. Citizenship & Immigration Servs., 452 F.3d 1254, 1258 (11th Cir. 2006).  In Morillo-Cedron,

> [t]he Administrative Appeals Office ("AAO") ordered the District Director to act pursuant to AAO rulings regarding the plaintiffs who were applicants for lawful permanent residency.  When time passed without any action by the District Director, plaintiffs filed suit in federal district court for mandamus relief.  The plaintiffs also sought costs under 28 U.S.C. § 2412(a), and attorney's fees and expenses under the EAJA, 28 U.S.C. § 2412(d) . . . . The district court issued a show cause order why the mandamus relief requested should not be granted. Subsequently, the Government voluntarily granted lawful permanent resident status to the . . . plaintiffs.
>
> The district court then issued an order denying the request for mandamus relief and granting the Government's motion to dismiss the complaint as moot.  The district court, however, found that the . . . plaintiffs were entitled to an award of costs and attorney's fees.  In so doing, the district court determined that the plaintiffs' lawsuit was the 'catalyst' which caused the Government to process their applications.  On that basis, the district court concluded that the plaintiffs were prevailing parties entitled to an award of costs and attorney's fees.

Id. at 1255.  The Eleventh Circuit reversed, holding that the plaintiffs were not "prevailing parties."  Id. at 1258.  According to the Eleventh Circuit,

> The record demonstrates that [plaintiffs] did not litigate to judgment the District Director's failure to abide by the AAO

rules and process their applications.  In other words, the plaintiffs did not obtain a court-ordered change in the legal relationship between them and the Government; they did not obtain relief on the merits of the claim.  The Government voluntarily processed their applications and conducted interviews before the district court entered any final judgment.

Id.

Defendants rely on <u>Buckhannon</u> and <u>Morillo-Cedron</u> to support their position that Alghamdi is not a "prevailing party" and is therefore not entitled to attorney's fees. Defendants contend that

[P]laintiff did not obtain an enforceable judgment on the merits nor did the plaintiff obtain a court ordered consent decree. Rather, the completion of the plaintiff's application for naturalization was the result of voluntary behavior on behalf of USCIS.  Specifically, because all of the pending background checks conducted through third-party agencies outside of the control of USCIS were completed, the plaintiff was naturalized and his case was dismissed by the district court as a result. Accordingly, the plaintiff failed to create a 'material alteration of the legal relationship of the parties' significant enough to permit an attorneys' fee award . . . . As such, the plaintiff is not entitled to an order decreeing him to be the prevailing party such that he is entitled to an award of attorneys' fees pursuant to the EAJA.

(Doc. 36:7.)  Defendants misapply <u>Buckhannon</u> and <u>Morillo-Cedron</u> to this case.

As a threshold matter, it is undisputed that Alghamdi achieved complete success on the merits of his claim.  Defendants failed to render a decision on the application "before the end of the 120-day period after the date on which the examination [under 8 U.S.C. § 1446 was] conducted."  In fact, when Alghamdi applied for relief in this Court, approximately 270 days had expired since he had successfully completed the examination, or more than twice the 120-day period prescribed by § 1447(b).  When this Court issued its order granting Alghamdi's request for a hearing on March 6, 2006, approximately 450 days had expired since his successful completion of the examination without any decision on the application.  This was approximately *four times* the number of days required to invoke the jurisdiction of this Court under § 1447(b). Not only did this Court schedule a hearing on Defendants' failure to timely determine the application for

naturalization pursuant to 8 U.S.C. § 1447(b) as requested by Alghamdi, but Alghamdi was then naturalized less than thirty days following the hearing.  Thus, by any conceivable interpretation of "success on the merits," Alghamdi was clearly a "successful" party in this litigation because he obtained all that he desired from this litigation.

But the fact that Alghamdi achieved success on the merits of his claim is not the dispositive issue.  Rather, the second and indeed more crucial question, is whether Alghamdi's success on the merits resulted from a voluntary change in conduct on the part of Defendants or whether it resulted from "a court-ordered change" sufficient to create a "material alteration of the legal relationship of the parties."  Here, an analysis of the record and the applicable law compels a finding that the relief obtained by Alghamdi did not result from a voluntary change in conduct on the part of Defendants but bore the requisite "judicial imprimatur" necessary to justify his status as a "prevailing party."

Alghamdi commenced this action pursuant to 8 U.S.C. § 1447(b).  Section 1447(b) entitles an applicant for naturalization to a hearing in federal court when the government has failed to timely render a decision on the application.  Section 1447(b) is therefore not concerned with whether USCIS voluntarily grants or denies an application for naturalization; rather, § 1447(b) is concerned solely with the *timeliness* of that decision.  Indeed, the statute specifies a specific time period - 120 days after the date on which the examination is conducted under 8 U.S.C. § 1446 - that must expire before the applicant can invoke the jurisdiction of the district court.  The district court may then either determine the matter or remand the matter to the USCIS with instructions to determine the matter.

This construction of § 1447(b) as a statutory check on what could otherwise amount to an infinite amount of time available to the government in which to render a decision on the application, essentially a de facto denial of American citizenship without justification, is supported in the statute's legislative history.  As this Court noted in its order granting the hearing on the application, "A central purpose of [§ 1447(b)] was to reduce the waiting time for naturalization applicants."  United States v. Hovsepian, 359 F.3d 1144, 1160 (9th Cir. 2004) (citing H.R. Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542 (1989) (statement of Rep. Morrison)).  "Congress intended to

streamline the process of applying for naturalization and intended to reduce the burdens on courts and the INS." Id. (citing H.R. Rep. No. 101-87, at 8; 135 Cong. Rec. H4539-02, H4543 (statement of Rep. Smith)). "Representatives drafting the statute were concerned with the consistency and fairness of naturalization decisions." Id. at 1164 (citing H.R. Rep. No. 101-87, at 12-13).

Therefore, whether USCIS ultimately grants or denies the application are irrelevant for determining whether a plaintiff has succeeded on the merits of an action based on § 1447(b). The sole purpose of § 1447(b) is to provide the applicant with a decision on the application where a decision has been withheld for an unreasonable amount of time. And while the ultimate decision by USCIS to grant rather than deny Alghamdi's application may have been a voluntary one, the act of rendering a decision on the application by this Court's May 15, 2006, deadline clearly was not voluntary. The adjudication of the application by USCIS was the direct result of an order from a federal district court authorized under § 1447(b) to "issue appropriate instructions . . . to the service to determine the matter." When this Court instructed Defendants to render a decision on the application within thirty days, Defendants complied.

Defendants also cannot be said to have "voluntarily" processed the application for another reason. When Alghamdi filed the Complaint, jurisdiction was vested in this Court pursuant to § 1447(b). Courts have interpreted a court's jurisdiction under § 1447(b) to be exclusive rather than concurrent. See Hovsepian, 359 F.3d at , 1164 (9th Cir. 2004); Al Saidi v. Jenifer, 2005 U.S. Dist. LEXIS 35466, *10 (E.D. Mich. 2005); Zaranska v. United States Dep't of Homeland Sec., 400 F. Supp. 2d 500 (E.D. N.Y. 2005); Epie v. Caterisano, 402 F. Supp. 2d 589, 591 (D. Md. 2005); Castracani v. Chertoff, 377 F. Supp. 2d 71, 73 (D.D.C. 2005). In other words, once Alghamdi applied to this Court for relief, Defendants were stripped of their power to process, grant, or deny the application. Defendants could only reacquire the ability to determine the application if this Court "remand[ed] the matter . . . to the service," and then only under "appropriate instructions" from the Court. 8 U.S.C. § 1447(b). Exercising its authority under § 1447(b), this Court issued an order on April 10, 2006, remanding the matter to the USCIS for a period of thirty days. The order instructed the USCIS to render a decision on the application no later than May 10, 2006, and to notify the Court

immediately when a decision was rendered (Doc. 22.)  The processing of Alghamdi's application was therefore not the result of any voluntary decision, settlement, or change in position by Defendants; rather, the processing of Alghamdi's application was the result of a direct order from a federal district court that was vested with exclusive jurisdiction pursuant to statute.  If Defendants had failed to obey the order, they would have subjected themselves to the possibility of sanctions for civil contempt.  This Court's April 10, 2006 order therefore carried the "necessary judicial imprimatur" that was lacking in Buckhannon and Morillo-Cedron.  In contrast to the purely voluntary decisions that were uncoerced by court order in Buckhannon and Morillo-Cedron, this Court's order on April 10, 2006, was "a court-ordered change" sufficient to create a "material alteration of the legal relationship of the parties" because it *forced* Defendants to render a decision on the application, an obligation which Defendants had previously been unwilling to fulfill.

For the reasons enunciated above, Defendants' reliance on Perez-Arellano v. Smith, 279 F.3d 791 (9th Cir. 2002) is also misplaced.  In Perez-Arellano, Defendants denied Plaintiff's application for naturalization.  Plaintiff then filed an action in federal district court seeking de novo review of the decision to deny his application.  The parties filed a joint status report proposing that the case be held in abeyance pending settlement discussions.  The court approved the proposal.  Plaintiff then re-submitted his application for naturalization to Defendants.  This time, Defendants granted the application.  The action in district court was dismissed based on a joint motion of counsel for the parties.  When Plaintiff sought attorney's fees under the EAJA, the Ninth Circuit determined that Plaintiff was not entitled to such fees because he was not a "prevailing party."  Specifically, the Ninth Circuit determined that Plaintiff's "change of status was the result of the INS' voluntary decision and was not compelled by the district court."  Id. at 795.  In Perez-Arellano, as in Buckhannon and Morillo-Cedron, the relief obtained by the plaintiff resulted from purely voluntary decisions on the part of the defendants.  The plaintiff's application had been denied, Plaintiff sought to overturn that denial in court, but before the court could act, the defendants voluntarily reconsidered their decision to deny the application and granted the application.  In this case, however, Alghamdi's application was not granted or denied when he applied to this

Court for relief; rather, Alghamdi had not received a decision on his application at all. The commencement of the lawsuit and even the scheduling of the hearing had no impact on Defendants as Defendants *still* had failed to render a decision on the application even on the date of the hearing.  A court order, not simply the filing of a lawsuit, was necessary to achieve the result desired by Alghamdi and in fact, did achieve that result.  Thus, <u>Perez-Arellano</u> is inapplicable.

This Court finds the case of <u>Sapir v. Ashcroft</u>, 2003 U.S. Dist. LEXIS 26953 (M.D. Tenn. 2003) to be particularly persuasive in determining the appropriateness of characterizing Alghamdi as a "prevailing party."  In <u>Sapir</u>, Drs. Olga and Mark Sapir, the plaintiffs, submitted applications to the USCIS to become naturalized citizens.  Plaintiffs successfully completed their naturalization interviews on February 20, 2002.  However, like the facts in this case, USCIS failed to timely render decisions on their applications.  More than a year later, or April 14, 2003, Plaintiffs commenced legal proceedings in federal district court.  Like Alghamdi, Plaintiffs requested that the court compel the defendants to adjudicate their applications.  On June 13, 2003, Plaintiffs filed a "Petition for a Hearing on Naturalization Application Under 8 U.S.C. § 1447(b)," the same statute under which Alghamdi sought relief in this case.

Three days later, or June 16, 2003, Olga Sapir was notified that her application for naturalization had been approved and that she was scheduled to take the oath of citizenship on July 25, 2003.  USCIS had not rendered a decision, however, on Mark Sapir's application.  The court determined that USCIS had inordinately delayed adjudication of Mark Sapir's application and granted his petition for a hearing.  On July 14, 2003, the court scheduled a hearing for August 21, 2003, and ordered that "[a]t this hearing, the court will either adjudicate the application for naturalization pending for Dr. Mark Sapir or remand it to the Bureau of Citizenship and Immigration Services for immediate processing."  On July 21, 2003, USCIS informed Dr. Mark Sapir that his application for naturalization had been granted and that he was scheduled to take the oath of citizenship on July 25, 2003, the same day as his wife.  Plaintiffs then requested attorney's fees under the EAJA.

At issue in <u>Sapir</u>, like the issue in this case, was whether Plaintiffs were "prevailing parties" so as to entitle them to attorney's fees under the EAJA.  Citing

Buckhannon, the Sapir court correctly noted that a judgment on the merits and a court-ordered consent decree are "[t]ypical examples of judicially sanctioned change in the relationship of parties sufficiently bearing the court's imprimatur."  Id. at *5.  But more importantly, the Sapir court explained that

> However, the Sixth Circuit has recognized that interlocutory court orders that result in limited relief for the moving party may also qualify the movant as a prevailing party under Buckhannon.  See, e.g., Habich v. City of Dearborn, 331 F.3d 524, 534-35 (6th Cir. 2003); Dubuc v. Green Oak Township, 312 F.3d 736, 753 (6th Cir. 2002); Cf. Former Employees of Motorola Ceramic Prods v. United States, 336 F.3d 1360 (Fed. Cir. 2003) (plaintiffs securing remand to administrative agency due to agency error may be deemed prevailing parties).

Id. at *5-*6.

Applying these principles to the facts of its case, the court in Sapir concluded that

> only Dr. Mark Sapir may be deemed a prevailing party under Buckhannon.  That is because the court's decision to grant his Motion for a Hearing on Naturalization amounted to a decision that his naturalization application had been wrongfully delayed and that he was entitled under the Immigration and Naturalization Act to a prompt decision on his application.  The court set the matter for hearing as soon as practicable, given the court's calendar. [USCIS] then preempted the hearing by expediting processing of Dr. Mark Sapir's application.  However, it is clear to the court that [USCIS's] action was due to the court's granting the hearing, rather than simple initiation of the instant suit.  Thus, the court finds that Dr. Mark Sapir qualifies as a prevailing party as to his Motion for a Hearing on Naturalization.
>
> On the other hand, [USCIS's] decision to expedite processing of Dr. Olga Sapir's naturalization application occurred before the court ruled on the plaintiff's Motion for a Hearing on Naturalization.  At the time that Dr. Olga Sapir's naturalization application was approved, the court had not yet made any determination on whether her application had been wrongfully delayed.  Thus, [USCIS]'s action on her application cannot be said to bear the imprimatur of the court or be deemed to be the result of any sort of court-sanctioned change in the legal relations of the parties.  Accordingly, Dr. Olga Sapir does not qualify as a prevailing party under the guidelines set forth in Buckhannon.

Id. at *7-*8 (emphasis added).

The facts which qualified Dr. Mark Sapir as a "prevailing party" in Sapir are even less robust than the facts which would qualify Alghamdi as a "prevailing party" in this case.  In Sapir, the defendants approved Dr. Mark Sapir's application prior to the hearing date.  The court nevertheless considered Dr. Mark Sapir to be a "prevailing party" because its decision to grant the hearing indicated that Sapir was entitled to a prompt adjudication of his application.  In addition, the court concluded that it was the scheduling of the hearing, rather than the initiation of the lawsuit, which prompted the USCIS to render a decision on the application.  Here, unlike in Sapir, Defendants did not render a decision on Alghamdi's application prior to the hearing or even at the hearing itself; rather, Alghamdi was notified that his application had been approved twenty-nine days *after* the hearing.  The participation and imprimatur of this Court were therefore more pronounced in this case than they were in Sapir.  If Dr. Mark Sapir qualifies as a "prevailing party," surely Alghamdi should also qualify.

It must also be noted that this Court's decision to remand the matter to Defendants does not deprive Alghamdi of "prevailing party" status.  As indicated in Sapir, "the Sixth Circuit has recognized that interlocutory court orders that result in limited relief for the moving party may also qualify the movant as a prevailing party under Buckhannon."  Id. at *6. In addition, the Federal Circuit has specifically addressed and answered in the affirmative the question of whether a remand order to an administrative agency constitutes the securing of "some relief on the merits" under Buckhannon.  See Former Employees of Motorola Ceramic Prods. v. United States, 336 F.3d 1360 (Fed. Cir. 2003).

In Motorola Ceramic Prods., the plaintiff-employees at Motorola were dismissed from their jobs pursuant to a reduction in force.  Plaintiffs applied to the Department of Labor ("Department") for Worker Adjustment Assistance under a federal statute which grants benefits to workers who lose their jobs because of competition from imports.  The Department denied the applications on the basis that the job losses were not caused by competition from imports.  After the Department reconsidered but denied the applications again, Plaintiffs filed suit in the Court of International Trade.  The Court of International Trade is vested with jurisdiction to review decisions denying Worker

Adjustment Assistance and if it finds that the Department's decision was not supported by "substantial evidence," it may remand to the Department "to take further evidence" or set aside the determination, in whole or in part.  Plaintiffs requested that the court certify them for benefits, or, in the alternative, remand the matter to the Department for reconsideration.  The Department consented to the request for remand.  The court then ordered

> that defendant's consent motion is granted and the case is remanded to the Department of Labor for reconsideration . . . [and] that the Department of Labor will file the results of the reconsideration within sixty days from the date of entry of this order.

Id. at 1362.  The court did not enter a judgment, but it retained jurisdiction.  The parties thus agreed that the Department had erred in its decisions on the applications.  The agreement between the parties was memorialized in the consent order requiring reconsideration of the Department's decision.  Relief on the merits was therefore awarded by consent.  The Department then awarded Plaintiffs the benefits they sought.  The case was dismissed upon joint motion of the parties.  Plaintiffs then sought attorney's fees under the EAJA.  The district court denied the fee request, holding that Plaintiffs were not "prevailing parties" because the "Court's remand order did not constitute a judicially sanctioned change in the parties' legal relationship."  Id. at 1363.

The Federal Circuit reversed and held that Plaintiffs were "prevailing parties."  In arriving at this conclusion, the court distinguished between (1) remand orders from one court to another within the federal judiciary and (2) remand orders from courts to administrative agencies.  With respect to the former, the court determined that its own decisions as well as precedent from the Supreme Court counseled that in most circumstances, a remand order from one court to another does not constitute relief on the merits for the purposes of the fee-shifting statutes.  This is true because a remand order from one court to another does not guarantee a legal change in the relationship between the parties; rather, a remand order often requires the court to which the case is remanded to reconsider certain aspects or issues of the case.  It does not necessarily follow that the moving party will ultimately achieve a favorable outcome from a remand order.

With respect to remand orders from courts to administrative agencies, however, the court explained that

> Remands to administrative agencies are, however, different. The court proceeding is treated as a separate proceeding from the administrative proceeding, and a remand may constitute the securing of relief on the merits.  The Supreme Court has addressed this issue in two cases that preceded Buckhannon, Shalala v. Schaefer, 509 U.S. 292, 125 L. Ed. 2d 239, 113 S. Ct. 2625 (1993), and Sullivan v. Hudson, 490 U.S. 877, 104 L. Ed. 2d 941, 109 S. Ct. 2248 (1989).  These cases did not purport to employ the 'catalyst' theory, and Buckhannon made clear that no holding of the Court ever rested on that theory. 532 U.S. at 605.  The cases thus remain good law and are binding on this court.

Id. at 1365.

Quoting Hudson, the court in Motorola Ceramic Prods. stated that "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded."  Id. at 1365-66 (quoting Hudson, 490 U.S. at 877-88.)  The court then determined that

> We understand these cases to establish two principles.  When there is a remand to the agency which remand grants relief on the merits sought by the plaintiff, and the trial court does not retain jurisdiction, the securing of the remand order is itself success on the merits.  When there is such a remand, and the trial court retains jurisdiction, the claimant is a prevailing party only if it succeeds before the agency . . . . The Supreme Court has thus sharply distinguished between remands within the federal court system (which generally do not confer prevailing party status) and remands to administrative agencies (which may confer prevailing party status) . . . . [W]here the plaintiff secures a remand requiring further agency proceedings because of alleged error by the agency, the plaintiff qualifies as a prevailing party (1) without regard to the outcome of the agency proceedings where there has been no retention of jurisdiction by the court, or (2) when successful in the remand proceedings where there has been a retention of jurisdiction.

Id. at 1366.  Applying these principles to the case before it, the court concluded that:

> The case before us falls into the second category: a remand granting the party relief on the merits with retention of jurisdiction, which creates a prevailing party only if the party obtains the benefits it sought before the agency.  In this case, the Court of International Trade retained jurisdiction during the remand, and the remand order resulted in appellants' prevailing before the agency.  The appellants therefore qualify as prevailing parties . . .

Id. at 1367.

Applying the rules established by the Federal Circuit in Motorola Ceramic Prods. to the facts of this case, it is clear that Alghamdi qualifies as a "prevailing party."  This case, like Motorola Ceramic Prods., falls into the second category: a remand with retention of jurisdiction, which creates a prevailing party only if the party obtains the benefits it sought before the agency.  In this case, this Court retained jurisdiction during the remand under 8 U.S.C. § 1447(b), and the remand order resulted in Alghamdi prevailing before the agency.  Alghamdi prevailed before the agency because Defendants were not only forced to render a decision on his application for naturalization, but Alghamdi also obtained the reward that he ultimately sought: American citizenship.

Finally, Alghamdi is a "prevailing party" under Buckhannon because to the extent that Defendants contend that they agreed at the hearing to process Plaintiff's application within thirty days of the hearing date, such an agreement is the functional equivalent of a consent decree.  Black's Law Dictionary 441 (8th ed. 1999) defines "consent decree" as "[a] court decree that all parties agree to."  At the April 10, 2006, hearing, the minutes indicate that Defendants requested that the matter be remanded to Defendants for a period of thirty days (Doc. 21.)  Plaintiff agreed to this request.  Plaintiff then made a request of his own: that this Court render a decision on his application in the event that Defendants failed to do so within thirty days.  Defendants agreed.  The order of April 10, 2006 (Doc. 22), simply memorialized the agreements between the parties.  In this way, the order may be properly construed as a consent decree as all parties were in agreement.  In American Disability Ass'n v. Chmielarz, 289 F.3d 1315 (11th Cir. 2002), the Eleventh Circuit held that

> it is clear that, even absent the entry of a formal consent

decree, if the district court either incorporates the terms of a settlement into its final order of dismissal or expressly retains jurisdiction to enforce a settlement, it may thereafter enforce the terms of the parties' agreement.  Its authority to do so clearly establishes a 'judicially sanctioned change in the legal relationship of the parties,' as required by Buckhannon, because the plaintiff thereafter may return to court to have the settlement enforced.  A formal consent decree is unnecessary in these circumstances because the explicit retention of jurisdiction or the court's order specifically approving the terms of the settlement are, for these purposes, the functional equivalent of the entry of a consent decree.  See Smyth v. Rivero, 282 F.3d 268, 281 (4th Cir. 2002) ("Where a settlement agreement is embodied in a court order such that the obligation to comply with its terms is court-ordered, the court's approval and the judicial over-sight (in the form of continuing jurisdiction to enforce the agreement) may be equally apparent."); Nat'l Coalition of Students with Disabilities v. Bush, 173 F. Supp. 2d 1272, 1279 (N.D. Fla. 2001) ("The parties' voluntary Settlement Agreement and resulting order and judgment requiring compliance with that Agreement have the same effect, for purposes of establishing prevailing party status, as would a litigated order imposing the same terms.").

Id. at 1320.

In this case, this Court's order following the hearing on April 10, 2006, was the product of agreements between the parties which occurred at the hearing itself.  The stipulations of the parties were memorialized in the order, a type of settlement agreement between the parties.  This was no ordinary extra-judicial settlement agreement, however; rather, this settlement agreement was incorporated into an order of the Court, this Court retaining jurisdiction over the matter, ordering Defendants to render a decision on the application, and agreeing to render a decision on the application itself in the event that Defendants failed to do so within thirty days.  In essence, this Court's order memorializing the agreement between the parties; its order requiring compliance with that agreement; its retention of jurisdiction and judicial oversight over that agreement; and its own guarantee to Plaintiff that it would render a decision on the application if Defendants failed to do so functioned as a consent decree. The formal entry of a consent decree was wholly unnecessary and would not have affected the status of the parties or this Court's power to enforce the terms of the

settlement and this Court's order of April 10, 2006.  Instead, by approving the settlement agreement, memorializing it in an order of the court, and then expressly retaining jurisdiction to enforce its terms and determine the matter itself, this Court effected precisely the same result as would have been achieved pursuant to a formal consent decree.  Under Buckhannon, a consent decree with its attendant judicial oversight, constitutes a "judicially sanctioned change in the legal relationship of the parties" such that Plaintiff qualifies as a "prevailing party."

That the parties consented to a remand order rather than to a comprehensive "settlement agreement" does not alter the analysis.  In Motorola Ceramic Prods., the Federal Circuit held that the consent nature of a remand order does not deprive appellants of "prevailing party" status.  Motorola Ceramic Prods., 336 F.3d at 1367. This holding rested on the Supreme Court's decision in Melkonyan v. Sullivan, 501 U.S. 89, 115 L. Ed. 2d 78, 111 S. Ct. 2157 (1991) and the District of Columbia Circuit's decision in Envtl. Defense Fund, Inc. v. Reilly, 1 F.3d 1254 (D.C. Cir. 1993).  The court in Motorola Ceramic Prods. stated that

> The consent nature of [a] remand order does not deprive appellants of prevailing party status . . . . Indeed, the Supreme Court's decision in Melkonyan is directly on point.  A claimant was denied Social Security benefits by the Secretary; appealed the denial to the appropriate district court; and moved for summary judgment.  The Secretary cross-filed for summary judgment.  While the summary judgment motions were pending, the  Secretary urged that the case be remanded to the agency.   The district court granted a joint motion for remand, ordering that 'defendant's motion to remand, concurred in by plaintiff, is granted.  The matter is remanded to the Secretary for all further proceedings.' Melkonyan, 501 U.S. at 92 (internal citation omitted).  On remand to the agency, the claimant obtained 'all the relief he had initially requested.' Id. The claimant then applied for attorney's fees under EAJA.  In remanding for clarification of the district court order, the Supreme Court ruled that if the district court had intended to retain jurisdiction, the claimant was a prevailing party for the purposes of the EAJA.  'If petitioner is correct that the court remanded the case' and retained jurisdiction, the Court held, 'the Secretary must return to the District Court, at which time the court will enter a final judgment.  Petitioner will be entitled to EAJA fees unless the Secretary's initial position was substantially justified.'  Id. at 102.  Likewise in Envtl Defense

> Fund, the District of Columbia Circuit held that when the EPA
> filed a joint motion with a plaintiff for a remand to comply with
> notice and comment requirements which the plaintiff had
> alleged the EPA had violated, the plaintiff was a prevailing
> party under EAJA.  1 F.3d at 1256-57.  Thus, a consent
> remand is to be treated the same way as a contested remand.
> The same prevailing party rules apply.

Motorola Ceramic Prods., 336 F.3d at 1367-68.  Under these authorities, the court in

Motorola Ceramic Prods. concluded that the consent nature of the remand order did not

deprive appellants of their status as "prevailing parties."  So too in this case, even if this

Court's remand order was obtained by consent of both parties, the consent nature of the

order does not deprive Alghamdi of "prevailing party" status.

In summation, Alghamdi is a "prevailing party" under the EAJA because this

Court, which was vested with exclusive jurisdiction over this matter under 8 U.S.C. §

1447(b), determined that the processing of Alghamdi's application had been wrongfully

delayed; scheduled a hearing on the matter; issued a remand order to Defendants while

retaining jurisdiction; and Alghamdi achieved complete success on the merits of his

claim.  These events bear the necessary "judicial imprimatur" sufficient to create the

"material alteration of the legal relationship of the parties" and to justify the label

"prevailing party" under the Supreme Court's decision in Buckhannon and the decisions

interpreting it.

## B.  Substantial Justification or Special Circumstances

As a prevailing party, Alghamdi is entitled to attorney fees and expenses under

the EAJA "unless the court finds that the position of the United States was substantially

justified or that special circumstances make an award unjust."  28 U.S.C. §

2412(d)(1)(A).  The "'position of the United States' means, in addition to the position

taken by the United States in the civil action, the action or failure to act by the agency

upon which the civil action is based . . . " 28 U.S.C. § 2412(d)(2)(D).  "The government

bears the burden of showing that its position was substantially justified."  Haitian

Refugee Ctr. v. Meese, 791 F.2d 1489, 1496 (11th Cir. 1986) (citations omitted).  The

Supreme Court has stated that "substantially justified" means "'justified in the substance

or in the main' - that is, justified to a degree that could satisfy a reasonable person."

Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490, 504

(1988).  The <u>Underwood</u> Court noted that this definition of "substantially justified" is "no different from the 'reasonable basis both in law and fact' formulation adopted by . . . the vast majority of . . . Courts of Appeals that have addressed this issue."  487 U.S. at 565, 108 S. Ct. at 2550, 101 L. Ed. 2d at 505.  "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness."  487 U.S. at 566, 108 S. Ct. at 2550, 101 L. Ed. 2d at 505.

In the various documents filed by Defendants in this case, Defendants offer two reasons to justify the delay in processing Alghamdi's application.  First, Defendants assert that they could not process Alghamdi's application until the background check was completed.  Defendants urge that "background checks of applications for citizenship in the United States are a very important public and national safety concern, no more so than after the events of 9-11."  Obviously, no reasonable person would dispute Defendants' contention that background checks of applicants for American citizenship are vital to protecting the safety and security of this country, particularly in a post-911 world.  "Citizenship . . . implies a duty of allegiance on the part of the member . . ." <u>Luria v. United States</u>, 231 U.S. 9, 22, 34 S. Ct. 10, 13, 58 L. Ed. 101, 105.  This is particularly true in the United States where "[u]nder our Constitution, a naturalized citizen stands on an equal footing with the native citizen in all respects, save that of eligibility to the Presidency."  <u>Baumgartner v. United States</u>, 322 U.S. 665, 673, 64 S. Ct. 1240, 1245, 88 L. Ed. 1525, 1531 (1944) (<u>quoting</u> <u>Luria</u>, 231 U.S. at 22, 34 S. Ct. at 13, 58 L. Ed. at 105 (1913)).  To alleviate concerns about an applicant's allegiance and security, an applicant for naturalization is required to undergo a background investigation before citizenship is granted.  <u>See</u>, <u>e.g.</u>, 8 U.S.C. § 1446(b) & 8 C.F.R. § 335.1.

But while a reasonable person would not dispute the necessity of conducting a background check on an applicant for naturalization, a reasonable person would require a satisfactory justification for a substantial *delay* in completing the background check.  Indeed, government agencies are required to conclude matters presented to them within a "reasonable time."  <u>See</u> 5 U.S.C. § 555(b).  Otherwise, an applicant for naturalization remains in perpetual limbo and is by de facto, denied his citizenship, a right that has been afforded by Congress to deserving individuals since the rise of the

American democracy.  This is particularly true when Congress has enacted legislation permitting the applicant to apply to federal district court if a decision is not rendered on the application within 120 days of the completion of the examination under 8 U.S.C. § 1447(b).  Here, Defendants offer no justification for the delay; rather, they merely state that "background checks were necessary and had to be completed before the plaintiff could be naturalized."  (Doc. 36:8-9.)  This explanation merely restates, in a conclusory manner, the necessity of completing the background check; it does not *justify* the delay.

Defendants have failed to justify, let alone "substantially" justify, the delay.  If safety and security were truly the primary concerns of Defendants, they presumably would have conducted the background check *before* permitting Alghamdi to even take the examination.  In fact, Defendants' own governing regulations, codified in 8 C.F.R. § 335.2(b) *require* Defendants to conduct the background check before allowing Alghamdi to complete the examination.  Section 335.2(b) states, in relevant part:

> Completion of criminal background checks *before* examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application *only after* the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed . . . .

(emphases added.) By permitting Alghamdi to take the examination before receiving a definitive response from the FBI that a full criminal background check of Alghamdi had been completed, Defendants essentially violated their own governing regulations.

Defendants make no attempt to justify or to even address their decision to conduct the examination before completion of the background check.  This Court's research revealed a case in which the USCIS testified that its practice of conducting the examination before completion of the background check rests on the "assumption that a naturalization candidate's application [will] likely be approved, and in the interests of efficiency, it [is] prudent to conduct the remaining portions of the naturalization process while the . . . background check remain[s] to be completed."  Sweilem v. U.S. Citizenship & Immigration Servs., 2005 U.S. Dist. LEXIS 19630, *11 (N.D. Ohio 2005). Whether Defendants acted on this assumption in permitting Alghamdi to take the examination before his background check had been completed is uncertain as

Defendants did not address that issue.  However, what *is* certain is that regardless of the administrative sensibility of such conduct, it is clear that from a legal standpoint, such conduct is not justified.  The United States Supreme Court and the Eleventh Circuit have stated that "[t]he INS must adhere to its own regulations and procedures." Haitian Refugee Ctr., 791 F.2d at 1499 (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267, 74 S. Ct. 499, 503, 98 L. Ed. 681 (1954); United States v. Nixon, 418 U.S. 683, 695-6, 94 S. Ct. 3090, 3101-02, 41 L. Ed. 2d 1039 (1974)).

Moreover, if Defendants had followed the requirement that the background check be completed before the examination, Defendants presumably would have had an unlimited amount of time in which to obtain the results of the background check before proceeding with the examination.  This is true because the 120-day clock under § 1447(b) begins to run on the day the examination is conducted.  If the examination is not conducted, the 120-day clock does not begin to run and the applicant is not entitled to apply for relief in federal district court under § 1447(b).  For all of these reasons, Defendants' first argument in support of its contention that its position was "substantially justified" is devoid of merit.

Defendants next contend that their position was "substantially justified" because the criminal background check was conducted by third-party agencies.  Defendants assert that these third-party agencies, particularly the F.B.I. which is part of the Department of Justice, are beyond the control of Defendants, who are officials of the Department of Homeland Security.  This contention is also without merit.  The amount of control, if any, that a government agency has over another is irrelevant for purposes of determining the propriety of an award of fees and expenses under the EAJA because the EAJA does not apportion fault among the various executive agencies of the federal government.  The EAJA awards fees and expenses to a prevailing party who brings suit against "the United States."  The Department of Justice and the Department of Homeland Security are both part of the United States government.  Furthermore, the "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based . . . " 28 U.S.C. § 2412(d)(2)(D).  Thus, Defendants' attempt to justify

their failure to process the application by shifting the blame to other agencies within the federal government fails as a matter of law.

Defendants have not asserted any "special circumstances" which would warrant a denial of attorney's fees in this case.  For the same reasons identified above, this Court finds that no such special circumstances exist.

**C. Fees and Expenses Under 28 U.S.C. § 2412(d)(3)**

Defendants also devote half a page, quite confusingly, to present their contention that the motion for attorney's fees and expenses should be denied because the fees and expenses requested by Plaintiff's counsel "appear to be related to administrative proceedings."  But an administrative proceeding, assert Defendants, must constitute an "adversary adjudication" before fees may be awarded under § 2412(d)(3) of the EAJA. Defendants maintain that adjudicatory proceedings cannot be considered "adversary adjudications" under the EAJA.  Therefore, Defendants contend that Plaintiff's counsel is not entitled to award of fees and expenses.

Defendants do not define "administrative proceeding" nor do they cite to authority to support their contention that the fees and expenses requested by Plaintiff's counsel are related to "administrative proceedings."  Plaintiff's counsel requests attorney's fees and expenses under § 2412(d)(1)(A).  Section 2412(d)(1)(A) permits an award of attorney's fees and expenses incurred by the prevailing party in "any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action." Section 2412(d)(3) applies to an award of expenses to a prevailing party "in any action for judicial review of an adversary adjudication."  If, as Defendants claim, this proceeding is not an "adversary adjudication," then this Court fails to discern how § 2412(d)(3) is even applicable to this case.  This argument is therefore without merit.

**D. Costs**

In addition to his request for attorney's fees and expenses, Alghamdi requests reimbursement for costs.  The EAJA permits a court, in its discretion, to award costs to a prevailing party.  28 U.S.C. § 2412(a)(1) & (b).  The costs allowable are those enumerated in 28 U.S.C. § 1920.[3]  Defendants contend that costs should be denied

---

[3]The costs allowable under § 1920 include (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily

because plaintiff's counsel has not (1) prepared or filed the necessary Bill of Costs as required by 28 U.S.C. § 1920 and Local Rules 54.1 and 54.2; nor (2) filed the Bill of Costs within ten days after entry of final judgment as required by Local Rule 54.2.

28 U.S.C. § 1920 requires that a "bill of costs" be filed.  Local Rule 54.2(A) states that

> **Procedure for Filing Bill of Costs.**  Costs shall be taxed as provided in Rule 54(d), Federal Rules of Civil Procedure.  A party entitled to costs shall, within ten (10) days after the entry of final judgment, unless time is extended under Rule 6(b), Federal Rules of Civil Procedure, file with the Clerk of Court and serve upon all parties, a bill of costs on a form provided by the Clerk, together with a notice of application to have the costs taxed.  The notice of application to have the costs taxed shall contain a date for taxation (normally one (1) month after the date of filing the bill of costs), which shall be secured from the Clerk.  This bill of costs shall include a memorandum of costs, and necessary disbursements, so itemized that the nature of each can be readily understood, and, where available, documentation of requested costs in all categories must be attached.  The bill of costs shall be verified by a person acquainted therewith.

Plaintiff's counsel has not complied with 28 U.S.C. § 1920 or with Local Rule 54.2(A) for the following reasons:

(1) Plaintiff's counsel filed a statement of fees and costs as an exhibit but failed to file a Bill of Costs as required by § 1920 and Local Rule 54.2(A).  The Bill of Costs itemizes the requested costs more clearly than the exhibit, allowing the costs requested to be compared with the costs allowable under § 1920;

(2) Plaintiff's counsel failed to attach any documentation to support the costs requested.  Specifically, the bulk of Plaintiff's requested costs include costs for gas, hotel, and meals.  Each of these costs are easily verifiable through receipts.  Plaintiff attached no receipts to his statement;

---

obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title [28 U.S.C. § 1923]; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 U.S.C. § 1828].

(3) Plaintiff's counsel failed to file his request for costs within ten days after entry of final judgment as required by Local Rule 54.2(A).  Judgment was entered on May 18, 2006.  Plaintiff's request for costs was not filed until June 13, 2006, or 26 days after judgment was entered.  Plaintiff's request is therefore untimely; and

(4) Plaintiff's counsel fails to articulate how the particular costs he requests are costs that are allowable under 28 U.S.C. § 1920.  Specifically, Plaintiff's counsel requests reimbursement for "preparation for filing rebuttal"; "telephone calls" to the Judge's assistant and to his client; and conference calls with the USCIS officer.  These costs, however, do not appear to be costs that are reimbursable under § 1920.  Such costs are presumably recoverable under the "other costs" section of the Bill of Costs; § 1920, however, does not provide for reimbursement of "other costs."  Therefore, Plaintiff's counsel is not entitled to reimbursement for these costs.

Because Plaintiff's counsel has failed to comply with 28 U.S.C. § 1920 and Local Rule 54.2(A), his request for costs must be denied in their entirety.

**E.  Amount of Fees and Expenses**

The motion and response in opposition advocate the amount of compensation for fees and expenses.  This Court will not address the appropriate amount of compensation at this point.  Local Rule 54.1(D) sets forth a "bifurcated procedure for determining attorneys' fees."  Under this procedure, the court must first rule on the issue of liability.  This order accomplishes that goal.  "[T]he provisions of subsections (E) and (F) will thereafter control."  Local Rule 54.1(E) & (F) governs the "determination of the amount of fee."

**CONCLUSION**

1.  Plaintiff's request for fees and expenses under 28 U.S.C. § 2412(d)(1)(A) is **granted**.

2.  Plaintiff's request for costs is **denied**.

3.  Plaintiff and Defendants shall review and comply with Local Rule 54.1(E) and (F) in determining the amount of fees and expenses to be awarded.

**ORDERED** on September 25, 2006.

**/s/ RICHARD SMOAK**
**Richard Smoak**
**United States District Judge**